Citation Nr: 1434275 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 08-11 022 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUES

1. Entitlement to service connection for a fungal infection of the left ear.

2. Entitlement to service connection for left ear hearing loss.


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

Veteran and his spouse


ATTORNEY FOR THE BOARD

Sarah Richmond, Counsel


INTRODUCTION

The Veteran had active service from February 1969 to November 1970.

This matter comes before the Board of Veterans' Appeals (Board) from a July 2007 rating decision of the above Regional Office (RO) of the Department of Veterans Affairs (VA) which denied service connection for laterite fungus, left ear, and for hearing loss, left ear. In January 2012 and January 2014, the Board remanded this case so that a VA examination report addressing the etiology of the disabilities on appeal could be provided. The case is now returned for appellate review.


FINDINGS OF FACT

1. The Veteran does not have a current fungal infection of the ear related to military service.

2. The preponderance of the evidence shows that the Veteran's left ear hearing loss was not present in service or until many years thereafter and is not related to service or to an incident of service origin, to include in-service acoustic trauma.


CONCLUSIONS OF LAW

1. Left ear fungal infection was not incurred during active military service. 38 U.S.C.A. §§ 1110, 5107(b) (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385 (2013).

2. Left ear hearing loss was not incurred during active military service and is not presumed to have been incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1154(a), 5107(b) (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385 (2013).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify & Assist

VA has a duty to provide the Veteran notification of the information and evidence necessary to substantiate the claims submitted, the division of responsibilities in obtaining evidence, and assistance in developing evidence, pursuant to the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). The notice requirements were accomplished in a letter sent in November 2006 prior to the initial rating decision. 

VA also fulfilled its duty to assist the Veteran by obtaining all relevant evidence in support of his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The RO obtained his service treatment records and VA treatment records. The Veteran submitted private treatment records and buddy statements. The Veteran was also afforded VA examinations in January 2009, February 2012, and April 2014. The Veteran has not indicated there are any additional records that VA should seek to obtain on his behalf. 

The Veteran has been afforded a hearing at the RO in which he presented oral argument in support of his claim. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) (2010) requires that the Decision Review Officer (DRO) who chairs a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the hearing the DRO fully explained the issues that were on appeal. With respect to any further duties under 38 C.F.R. § 3.103(c)(2), neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of the RO hearing. 

Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

Analysis

The Veteran contends he had a fungal infection of the left ear for which he was treated in service, and that he has had problems with his left ear ever since. He has also essentially argued two theories of entitlement regarding his claim for service connection for left ear hearing loss - first, based on the fungal infection of the left ear in service, and second, based on exposure to excessive noise as a truck driver in service.

In his formal claim for service connection, received in September 2006, the Veteran claimed service connection for laterite fungus of the left ear and also for hearing loss of the left ear. In an attached statement, he reported he started having problems with his left ear, in service, in Vietnam, and went to an Army doctor who examined his ear and told him he had a "laterite fungus". He claimed that after service he continued to have problems and went to an ear specialist who had never heard of a laterite fungus. Thereafter, he reportedly went to a local physician who had him irrigate the ear from time to time, because his ear wax would not come out on its own. He reported that in the last few years he had noticed some loss of hearing, especially in his left ear, and was still having problems with his left ear. 

In a statement received in December 2007 the Veteran reported that he started having trouble with his ear in Vietnam, and when he went on sick call, the doctor indicated that his ear infection was caused from "a type of fungus associated with laterite found in the soil of a country like Vietnam - wet and moist". 

Thus, although there is overlap in the theories of entitlement for the two issues on appeal, the Board will herein consider these claims (as the RO has done) as two separate issues, as set out on the first page.
 
Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir.2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table). The second and third elements may be established by showing continuity of symptomology. Continuity of symptomatology for certain chronic diseases may be shown by demonstrating "(1) that a condition was 'noted' during service or any applicable presumption period; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology." Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); see also Davidson, 581 F.3d at 1316; Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board"). 

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77. 

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Indeed, in Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit (Federal Circuit), citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a) (West 2002). Moreover, the United States Court of Appeals for Veterans Claims (Court) has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). 

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, and consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996). 

1. Service Connection for Fungal Infection of the Left Ear

The Veteran contends he had a fungal infection of the left ear for which he was treated in service, and that he has had problems with his left ear ever since. With regard to this claim, a review of the Veteran's service treatment records (STRs) shows no complaint of or treatment for any left ear problem. Post-service treatment records, however, do show treatment for left ear problems, as well as the Veteran's report of being treated for a left ear fungal infection in service. 

Post-service private treatment records from the Welborn Clinic showed that in August 1985, the Veteran was seen for chronic otorrhea and decreased hearing, left ear, and he dated his problems to a fungal infection in Vietnam. The impression was attic retraction and cholesteatoma, left ear. In September 1985, he was seen for follow-up, and examination showed an attic retraction of the left ear, but no cholesteatoma formation. The doctor advised his left ear should be watched carefully, and inspected and cleaned every three months or so. In April 1993, it was noted that he had intermittent otorrhea, left ear, since his Vietnam experience, but he had no subjective hearing loss or otalgia. The impression was chronic otitis media, left ear, with attic pocket. In November 1995, he was seen for follow-up, for his chronic otitis media, left ear, with recent otorrhea. 

Further, a private treatment record from Midwest Otolaryngology showed that in January 1999, the Veteran presented with an otologic odor, and reported he had contracted a fungal infection of his left ear in Vietnam, and since that time he had intermittent odor and occasional wax build-up. He denied a true otorrhea or infectious process. The assessment was that the Veteran had a clear physical examination today and likely had some intermittent waxy discharge, for which he was provided Debrox. Additional private treatment records from Dr. Gehlhausen showed that in April 2005, the Veteran was noted to have cerumen impaction in his left ear, and even after this was removed, the doctor noted that he seemed to be deaf in his left ear, which the Veteran indicated was a Vietnam war injury. 

VA treatment records showed that in August 2006, the Veteran complained of hearing loss in the left ear after sustaining a fungal infection in the left ear in Vietnam. He also complained of frequent wax build-up, and indicated he used an ear plug when he showered. 

With regard to current disability, the Board notes that, as set out above, post-service treatment records show treatment for left ear problems; thus, the record reflects that the Veteran arguably has a left ear disability. In that regard, the United States Court of Appeals for Veterans Claims (Court) has held that the presence of a chronic disability at any time during the claim process can justify a grant of service connection, even where the most recent diagnosis is negative. McClain v. Nicholson, 21 Vet. App. 319 (2007). What is missing from the record is competent evidence showing that the Veteran's left ear condition may be causally related to active service. 38 C.F.R. § 3.303. 

The Board finds that the Veteran has provided competent statements to the effect that he was treated for a left ear problem in service, and that he continued to experience left ear problems after service. Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006); see also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007). However, medical evidence is generally required to establish a medical diagnosis or to address questions of medical causation; lay assertions of medical status generally do not constitute competent medical evidence. See Espiritu v. Derwinski, 2 Vet. App. 492, 494 (1992). Although the Veteran underwent a VA examination in January 2009, and reported having a fungal infection in Vietnam, and that he had chronic ear infections in his left ear since that time, this was primarily an audiological examination, and the examiner did not render an opinion regarding whether he has current left ear disability, beyond hearing loss, due to service. The Board acknowledges that on the VA examination, otoscopic examination at that time revealed clear ear canals bilaterally. Nonetheless, the Board found it necessary to afford the Veteran another VA medical examination regarding the probable etiology of any left ear disability, beyond hearing loss and remanded the claim in January 2012. McLendon v. Nicholson, 20 Vet. App. 79 (2006); Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). In the Board remand, the Board noted that in the report, the examiner must acknowledge and discuss the Veteran's report of a continuity of left ear symptoms since service. Dalton v. Nicholson, supra.

A VA medical addendum was obtained in February 2012. With respect to the ear infection claim, the examiner indicated that left ear disability was less likely as not related to service to include his claims of noise exposure and treatment for infection. 

The Veteran's representative, in a November 2013 informal hearing presentation, argued that the Board's prior remand instructions were not completely followed as the examiner did not address (or accept) the Veteran's ability as a lay person to report his left ear problems since service. In fact, the representative stated that the addendum opinion regarding left ear hearing loss was essentially a recitation of the prior opinion in the record from January 2009 which was already determined to be inadequate, with no discussion of the Veteran's lay testimony. 

The Board agreed that the medical opinion provided was inadequate because it did not fully address the inquiries posed by the Board in the prior remand. Thus, there was not compliance with the Board's prior remand directives and the Board remanded the claim again in January 2014. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008). 
 
In April 2014 a VA examiner provided an opinion that the Veteran's current left ear problem was not related to service. The examiner noted that the Veteran had complaints of ear infections in service and as a child but that his biggest complaint after service was impacted cerumen in the left ear. The examiner indicated that cerumen impaction was noted on many post-service treatment records and that it was not an uncommon occurrence. The examiner further indicated that there was no nexus relating any current cerumen impaction to military service, nor was there was evidence of current otitis media or chronic otorrhea.

Based on the evidence, the Board concludes that service connection is not warranted for a left ear disability. While the Veteran and his wife are competent to state that he has had left ear problems since service, including an odor coming from the ear and hearing loss, they are not competent to render a diagnosis of otitis media or other ear disease. The record shows that the Veteran had treatment for chronic otorrhea in the left ear in 1985 and chronic otitis media in the left ear in 1995. However, examination in 1999 showed no true otorrhea or infectious process in the left ear and the assessment was that the Veteran likely had some intermittent waxy discharge. Additional treatment records in 2005 through the time the Veteran filed his service connection claim in 2006 show that the Veteran had cerumen impaction in his left ear that was removed. Thus, while the Veteran had a previous history of otorrhea and otitis media, treatment records dated since 1999 show only impacted cerumen, which the examiner determined in April 2014 was not related to military service. 

The Board finds that the April 2014 VA opinion is sufficiently adequate on the matter at hand and is probative evidence against a nexus, as it was based on a review of the evidence in the claims folder, which included the prior VA examination report and opinions, and a review of the Veteran's reported in-service and post-service history. This opinion was also supported by a clear rationale based on the evidence, or lack thereof, in the service treatment records, as well as the Veteran's history as reported at the earlier VA examinations and the clinical findings noted at that time. Specifically while the examiner acknowledged and accepted the Veteran's statements that he was treated for ear infections in service as true, the examiner determined that the Veteran's current ear problem did not include otitis media or otorrhea and that his impacted cerumen was common and not related to military service. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA opinion with respect to this issue has been met and an additional examination to obtain another medical nexus opinion is unnecessary. See McLendon v. Nicholson, 20 Vet. App. 79 (2006) (discussing circumstances when a VA examination is required); 38 C.F.R. § 3.159 (c)(4). 

There is no other medical evidence of record, specific to the Veteran's case, which links any present left ear disability to his period of military service. The Board has considered the applicability of the benefit of the doubt doctrine; however, the preponderance of the evidence is against the claim and that doctrine is thus, inapplicable. Accordingly, service connection for left ear disability is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

2. Service Connection for Left Ear Hearing Loss

As noted above, the Veteran has also argued two theories of entitlement regarding his claim for service connection for left ear hearing loss - first, based on the fungal infection of the left ear in service, and second, based on exposure to excessive noise as a truck driver in service.

With regard to the claim for service connection for left ear hearing loss, although STRs show no report or finding of hearing loss, the Board acknowledges that the lack of any evidence showing the Veteran exhibited left ear hearing loss consistent with the regulatory threshold requirements for hearing disability during service (38 C.F.R. § 3.385 ) is not fatal to his claim. The laws and regulations do not require in-service complaints of, or treatment for, hearing loss in order to establish service connection. See Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Instead, the Court has held that where there is no evidence of the Veteran's hearing disability until many years after separation from service, "[i]f evidence should sufficiently demonstrate a medical relationship between the veteran's in-service exposure to loud noise and his current disability, it would follow that the veteran incurred an injury in service." Hensley v. Brown, 5 Vet. App. 155, 160 (1993).

VA audiological testing conducted in January 2009, confirms that the Veteran does have left ear hearing loss disability for VA purposes, under 38 C.F.R. § 3.385. 

With regard to the relationship between left ear hearing loss and noise exposure in service, on the VA examination in 2009, the Veteran complained of hearing loss and reported military noise exposure to heavy equipment in Vietnam, and he denied wearing ear protection. He denied any occupational or recreational noise exposure. The examiner noted that the Veteran's induction and separation testing showed normal hearing thresholds and that there was no documented hearing loss at the time of separation or any change in hearing sensitivity during active service. The examiner opined that, due to his normal hearing thresholds at the time of discharge, the Veteran's hearing loss was less likely as not related to military service. 

The record reflects, however, that the Veteran has contended that he was exposed to noise in service, from heavy equipment, and his DD Form 214 shows that his military occupational specialty was truck driver. 

Because the VA examiner in 2009 seemed to base the opinion provided on the lack of a showing of hearing loss during the Veteran's service, and did not acknowledge the Veteran's competency to report exposure to noise in service, in January 2012, the Board found that this matter should be remanded in order to obtain a supplemental opinion. See Barr v. Nicholson, 21 Vet. App. 303 (2007). It was noted that on remand, the VA examiner should be advised as to the Veteran's competency to report lay-observable events (exposure to noise) and on the presence of symptoms (hearing loss), and should again be asked to render an opinion, with supporting rationale, as to whether the Veteran's left ear hearing loss may be related to noise exposure in service.

A VA medical addendum was obtained in February 2012. The examiner opined that the Veteran's left ear hearing loss was not related to service because there was no documented hearing loss/treatment of hearing loss or complaint thereof during service. In addition, the examiner indicated that left ear hearing loss was less likely as not related to service to include his claims of noise exposure and treatment for infection. 

The Board remanded the claim again in January 2014 finding that the examiner did not address the remand directives. 

In April 2014 another VA examination was provided. The examiner commented that the Veteran reported noise exposure in service and denied any noise exposure after service and that he did not have hearing loss as noted in the service treatment records. The examiner determined that the Veteran's present hearing loss was not related to his ear infections in service, as his hearing loss was sensorineural. The examiner further determined that the Veteran's hearing loss was not consistent with noise exposure, but rather presbycusis, given that he did not have any significant auditory threshold shift in service.
 
In a June 2014 Written Brief Presentation, the Veteran's representative argued that the April 2014 VA examination was inadequate in addressing the hearing loss disability, as the examiner stated that there was no significant threshold shift when, according to the Veteran's representative, there was a significant threshold shift in service. The Veteran's representative also questioned the validity of the separation examination and the examiner's rationale that presbycusis was the cause of the Veteran's hearing loss. The representative went on to site several studies, which he stated supported the presence of hearing loss after exposure to noise. Finally the representative comments that part of the service treatment records were illegible.

The service treatment records show that at the February 1969 induction physical, puretone thresholds in the left ear at 500, 1000, 2000, and, 4000 Hertz were 20, 10, 15, and 25 decibels respectively. Puretone thresholds at 3000 and 6000 Hz were not tested. At the November 1970 discharge examination, puretone thresholds in the left ear at 500, 1000, 2000, and 3000 were 0, 0, 5, and 5 decibels, respectively. Puretone thresholds at 4000 Hz were illegible. The service treatment records show no complaint or treatment for organic ear disorders or ear trauma. While there does appear to be an auditory threshold shift, it shows an improvement in hearing ability from induction to discharge. Even though the Veteran's representative questions the validity of the discharge examination there is no evidence in the service treatment records to suggest that the discharge examination was flawed or should otherwise be considered invalid.

The Veteran's DD Form 214 shows that his Military Occupational Specialty was truck driver. There is no evidence of record to show that the Veteran engaged in combat, but in each case where a Veteran is seeking service connection for any disability, due consideration shall be given to the places, types, and circumstances of such Veteran's service as shown by such Veteran's service record, the official history of each organization in which such Veteran served, such as Veteran's medical records, and all pertinent medical and lay evidence. 38 U.S.C.A. § 1154(a) (West 2002). As such, the Board concedes that noise exposure is consistent with the Veteran's service. 

Based on the evidence, however, the Board concludes that service connection is not warranted. As noted, the record shows that the Veteran has had a hearing loss disability since 2009. Thus, a current disability is established. The Board has considered the Veteran's testimony concerning in-service noise exposure and his documented duty assignment. Also as noted above, in giving due consideration to the circumstances of his service, noise exposure is conceded. 38 U.S.C.A. § 1154(a). 

Because the Veteran is competent to describe impaired hearing in service, but not a hearing loss disability under 38 C.F.R. § 3.385, service connection based on continuity of symptomatology applies. Continuity of symptomatology generally requires evidence of a nexus between the current disability and the postservice symptoms. While a left ear hearing loss disability was not affirmatively shown to be present in service and the evidence is insufficient to establish chronicity during service, the Veteran is competent to describe noise exposure and symptoms of impaired hearing in service and since service. 38 C.F.R. § 3.159; Layno, at 71. To this extent, the Veteran's lay statements of impaired hearing since service are competent evidence of postservice continuity of symptomatology. 

The Veteran asserts that his current hearing loss disability is a continuation of the impaired hearing he experienced in service, which is an expression of a causal relationship or nexus between the current disability and continuity of symptoms. As the statement is an inference based on facts, it is an opinion rather than a statement of fact. Thus, the resolution of issues which involve medical knowledge, such as the diagnosis of a disability and the determination of medical etiology, require professional evidence. See Espiritu v. Derwinski, supra. The question then is whether the Veteran as a lay person is competent to offer an opinion on the causal relationship or nexus between the current left ear hearing loss disability and the postservice symptomatology, or alternatively, between his reported in-service noise exposure and the later onset of hearing loss.

As to the question of whether the Veteran as a lay person is competent to offer an opinion on the causal relationship or nexus between the current left ear hearing loss disability and the postservice symptomatology, a hearing loss disability under 38 C.F.R. § 3.385 is not a simple medical condition because the disability cannot be identified or diagnosed by the Veteran as a lay person based on mere personal observation, that is, without specialized education, training, or experience in interpreting an audiogram, such as an audiologist or other medical professional, who is trained to administer and interpret an audiogram. Thus, while the Veteran is competent to report the presence of impaired hearing, hearing loss disability under 38 C.F.R. § 3.385 is not a type of condition under case law that has been found to be capable of lay observation. Further, it has not been established that the Veteran is otherwise qualified through specialized education, training, or experience to offer an opinion on the causal relationship or nexus between the current hearing loss disability under 38 C.F.R. § 3.385 and the continuity of symptoms that the Veteran avers. For this reason, the Veteran's lay opinion is not competent evidence of a causal relationship or nexus between the current disability and the postservice symptomatology. Since the Veteran's lay opinion is not competent evidence in this regard, the lay opinion cannot be considered as competent lay evidence favorable to claim based on continuity of symptomatology. 

Although service connection is not established under either 38 C.F.R. § 3.303(a) or by chronicity or by continuity of symptomatology under 38 C.F.R. § 3.303(b) on the basis of lay evidence, service connection may still be established based on an initial diagnosis after service, when all of the evidence, including that pertinent to service, shows that the disability was incurred in service. 38 C.F.R. § 3.303(d). As noted, the Veteran as a lay person is competent to describe a contemporaneous medical diagnosis or symptoms that later support a diagnosis by a medical professional. Jandreau, at 1377. Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer a medical diagnosis, statement, or opinion. 38 C.F.R. § 3.159. As for the Veteran reporting a contemporaneous medical diagnosis, the medical evidence shows that a hearing loss disability under 38 C.F.R. § 3.385 was not shown until years after service, well beyond the one year presumptive period for a sensorineural hearing loss disability as a chronic disease under 38 C.F.R. §§ 3.307 and 3.309. As for symptoms described by the Veteran that later support a diagnosis by a medical professional, no medical professional has attributed the current left ear hearing loss disability to an injury, disease, or event, including noise exposure in service. The only competent medical evidence of record pertaining to causation or a nexus to service consists of the reports of VA examination. 

In this regard, the only positive evidence of a nexus between the current hearing loss and military service submitted by the Veteran, is his and his spouse's lay contentions. While the Veteran and his spouse may be competent to report symptoms of decreased hearing acuity during or after his military service, they are not competent to address the etiology of the hearing loss disability, e.g., noise exposure, ear infection, presbycusis. The Board also finds that their lay contentions regarding the etiology of the current left ear hearing loss are outweighed by the April 2014 audiologist's opinion that the current hearing loss is not likely to be a result of military service. 

The Board finds that the April 2014 VA medical opinion adequately addresses the matter at hand and is probative evidence against a nexus, as it was based on a review of the evidence in the claims folder, which included the prior VA examination report and opinions, and a review of the Veteran's reported in-service and post-service history. This opinion was also supported by a clear rationale based on the evidence, or lack thereof, in the service treatment records, as well as the Veteran's history as reported at the earlier VA examination and the clinical findings noted at that time. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA opinion with respect to this issue has been met and an additional examination to obtain another medical nexus opinion is unnecessary. See McLendon v. Nicholson, 20 Vet. App. 79 (2006) (discussing circumstances when a VA examination is required); 38 C.F.R. § 3.159 (c)(4). 

The fact that the examiner's opinion was based, in part, on the fact that hearing loss was not shown in service does not render the opinion inadequate because the specialist, as noted above, (1) took into account the Veteran's lay statements, (2) reviewed the available in-service and post-service medical records, (3) evaluated the in-service and post-service audiogram results, and also (4) provided an alternate theory for the etiology of the hearing loss based on the available clinical evidence (i.e. that the Veteran's hearing loss was the result of presbycusis). See Green v. Derwinski, 1 Vet. App. 121, 124 (1991) (medical opinion is adequate if it "takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one"). 

Regarding the Veteran's representative's contentions that there was no evidence to support the examiner's opinion that presbycusis was the cause of the Veteran's hearing loss, the examiner did provide a rationale that the pattern of loss was more consistent with presbycusis rather than noise-induced hearing loss, based on the fact that there was no significant threshold shift in service. The Veteran's representative comments that there was a significant threshold shift; however, this is a medical determination and there is no indication that the Veteran's representative is qualified to make a medical determination regarding the quality of the separation examination, whether the Veteran's hearing loss is the result of presbycusis, or whether there was a significant threshold shift in service. The service treatment records document a threshold shift to some extent, but it actually shows an improvement in hearing acuity from entrance into service to discharge, which would go against the Veteran's claim.

The Veteran's representative also cited to some studies, which he notes support that hearing loss can result after being exposed to noise. However, generic medical literature, which does not apply medical principles regarding causation or etiology to the facts of an individual case, does not provide competent evidence to satisfy the nexus element for an award of service connection. See Sacks v. West, 11 Vet. App. 314 (1998). Therefore, the studies provided do not provide probative evidence in favor of the Veteran's claim. While the VA examiner in April 2014 did not review the literature cited by the Veteran's representative, there is no requirement that a medical examiner comment on every favorable piece of evidence in a claims file. Monzingo v. Shinseki, 26 Vet. App. 97, 105 (2012); see Acevedo v. Shinseki, 25 Vet. App. 286, 293 (2012) (noting that the law imposes no reasons-or-bases requirement on examiners). Examination reports are adequate when they sufficiently inform the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion. Monzingo, 26 Vet. App. at 105.

The Board finds that the April 2014 audiologist sufficiently reviewed all necessary information of record to make a determination in this case and based the opinion on a rationale. Therefore, the Board finds that the April 2014 opinion is adequate and sufficient to address the Veteran's claim.

There is no other medical evidence of record, specific to the Veteran's case, which links the Veteran's current left ear hearing loss to his period of military service. The Board has considered the applicability of the benefit of the doubt doctrine; however, the preponderance of the evidence is against the claim and that doctrine is thus, inapplicable. Accordingly, service connection for hearing loss is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

Entitlement to service connection for a fungal infection of the left ear is denied.

Entitlement to service connection for left ear hearing loss is denied.



____________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs